UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY GUERRERO,

                              Plaintiff,              No. 05-CV-6272 CJS(P)

        -vs-

                                                       DECISION AND ORDER

LOWE'S HOME CENTERS, INC.,

                              Defendants.

_____


APPEARANCES

For plaintiff:              Rick S. Geiger, Esq.
                            Law Offices of Rick S. Geiger, LLC
                            18 Harrison Circle
                            Pittsford, New York 14534

For defendant:              Marguerite S. Walsh, Esq.
                            Bradley E. Strawn, Esq.
                            Littler Mendelson, P.C.
                            Three Parkway
                            1601 Cherry Street, Suite 1400
                            Philadelphia, Pennsylvania 19102-1321

                            Kristine A. Sova, Esq.
                            Littler Mendelson, P.C.
                            885 Third Avenue, 16th Floor
                            New York, New York 10022-4834


INTRODUCTION

        This is an action alleging employment discrimination pursuant to Title VII of the

Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and the

New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.*  Now before the

1

Court is defendant's motion [#27] for summary judgment.  For the reasons that follow, the application is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to plaintiff Mary Guerrero ("plaintiff").  Plaintiff was employed at defendant Lowe's Home Centers, Inc.'s ("defendant") retail store in Webster, New York, for approximately three months between November 2003 and February 2004.  Plaintiff's job title was "Installed Sales Coordinator."  Plaintiff shared an office with two individuals, namely, her immediate supervisor Daren Arrington ("Arrington"), whose title was "Installed Sales Manager," and Tina Nowak ("Nowak"), who was the store's Sales Manager as well as Arrington's immediate supervisor.  Susan Holtz ("Holtz") was the store's Human Resources Manager and Scott Lee ("Lee") was the Store Manager. Plaintiff was aware that defendant had an anti-discrimination policy in place at all relevant times, and she also understood that, pursuant to that policy, she had "an obligation" to report instances of harassment. (Pl. Dep. 80).

Plaintiff contends that Arrington made several offensive remarks to her during the brief period of her employment with the defendant.  For example, on one occasion Arrington asked plaintiff if she was Mexican, because of her surname, to which she responded that she was not Mexican, but that her husband was.  Arrington replied, "I lived in Texas.  There was a lot of them there." (Pl. Dep. 134).  Plaintiff asked Arrington "what [his comment] was supposed to mean," and he responded "just that a lot of

Mexicans live in Texas." (*Id*. at 138).[1]  Plaintiff contends that Arrington would not have made this comment if she were a man.  Plaintiff also believes that it was inappropriate that Arrington would notify her whenever her husband was in the store shopping. (*Id*. at 134).

Plaintiff further complains that on one occasion Arrington inappropriately asked her to bring him coffee.  Plaintiff states that Arrington made this request of her because she was in the habit of bringing coffee to work for herself that she had purchased at McDonald's. (Pl. Dep. 139).  Plaintiff responded by saying, "You're going to make more money than I do.  If you're going to give me the money, I will pick you up a cup of coffee every day." (*Id*.).  Subsequently, Arrington never gave plaintiff money for coffee and she never brought him coffee. (*Id*.).

On another occasion, Arrington asked plaintiff to give him half of a submarine sandwich that she was eating, and when she refused, he told her that she "was being a fucking bitch." (Pl. Dep. 139).  Plaintiff claims that she later discussed the incident with both Holtz and Nowak.  Plaintiff also claims to have heard from a co-worker that Arrington would "badmouth" her while speaking to other employees. (Pl. Dep. 145-46).  In addition, plaintiff contends that Arrington lied to try to get her into trouble, such as, by making false entries about her job performance in the store's logbook. (Pl. Dep. 142).

According to plaintiff, Arrington's final offensive comment to her occurred on January 15, 2004.  Arrington was in a part of the store located some distance away from

---

[1]Plaintiff made a contrary allegation about this incident in her complaint to the New York State Division of Human Rights, wherein she stated that after she asked Arrington why he had made the comment, here merely "walked away laughing."(Def. Appx. Ex. K)

the Installed Sales Office, and had told plaintiff to bring a file to him.  When plaintiff brought the file to Arrington, he told her to return to the office and bring him another file as well.  When plaintiff asked Arrington why he hadn't called her on her walkie talkie and notified her that he needed the second file, in order to save her a trip, he responded by saying, "Don't you think you need to lose weight anyhow?"  (Pl. Dep. 129).  Plaintiff responded by telling Arrington, "Screw you!" (*Id*.).  As to Arringtons's comment, plaintiff stated, "I think he thought it was a joke, that it was, you know, Darren was arrogant.  He just – he didn't care what he said." (*Id*. at 130).  Plaintiff complained to Holtz and Nowak about Arrington's comment, and Holtz obtained statements confirming plaintiff's version of events from two male co-workers who had witnessed Arrington's comment.  Plaintiff asked, though, that Arrington not be written up for sexual harassment.[2]   Nonetheless, defendant issued a written reprimand to Arrington concerning the incident, which stated, in relevant part: "Darren is to treat fellow associates with the utmost respect and dignity. Any further violations will result in further corrective action up to and including termination." (Def. Appx. [#28-5] Ex. 9).  The written reprimand was issued the same day as Arrington's comment and was signed by Nowak, Holtz, and Lee. (*Id*.)

More generally, plaintiff contends that Arrington was rude to both males and females at the store and that "everyone complained about Daren." (Pl. Dep. 112, 118-19).  Plaintiff states that Arrington "had the attitude that he was the only one that could do anything at Lowe's and do the job." (*Id*. at 119).  For example, plaintiff states that

---

[2]In her affidavit submitted in opposition to defendant's summary judgment motion, plaintiff wrote: "I stated that I did not want Arrington written up for sexual harassment because I was afraid of retaliation. I thought at the time that if I appeased this aggressive sexually harassing behavior that Arrington may show some decency and stop harassing me." (Pl. Aff. ¶ 5).  There is no indication, however, that plaintiff expressed this reasoning to Holtz or Nowak.

4

Arrington would criticize two of her male co-workers by "constantly putting 'em down about them not doing their job right." (*Id*.).  Plaintiff states that on one occasion Arrington tried "to make [an employee named] Mike look like he was stupid, [like] he didn't know what he was doing." (*Id*. at 124).  In fact, when plaintiff was asked if she had ever heard male employees complain about Arrington, she responded: "There has been so many, I can't even recall them right now." (*Id*. at 125).  In that regard, plaintiff alleges that Arrington "had no people skills," "didn't have customer service skills," "didn't know how to talk to people," and "just . . . wasn't a people person." (*Id*. at 123).  Plaintiff agreed, in fact, that Arrington "was a big jerk to everybody." (*Id*. at 148).  On the other hand, when asked if she had ever called a male co-worker a "bastard," plaintiff responded that she "might have said something about Daren [Arrington] being one," but was not sure. (Pl. Dep. 109).

Plaintiff states that the problems between her and Arrington culminated in an argument between them over whether or not she should photocopy a sales manual that was several inches thick.  Plaintiff states that Arrington told her that she needed to copy the manual immediately, because it had been requested by Lee.  (Pl. Dep. 148).  Plaintiff objected to photocopying the manual because it was large, and because Nowak had told her that the store could order another copy of the manual rather than having it copied. (Pl. Dep. 151).  In any event, plaintiff refused to copy the manual, even though Arrington, who was her "boss" and who had the power to discipline her, had repeatedly requested, over a period of "three, four days," that she do so. (Pl. Dep. 64-65, 148-151).  Plaintiff admits that during the ensuing argument, she was "yelling" at Arrington, and he

was yelling at her. (*Id.* at 150-151).

Lee overheard the argument and entered the office.  According to plaintiff, Lee stated that he had not requested a copy of the sales manual, and Arrington responded that he believed that Lee should have one anyway. (*Id*. at 149-150).  Lee subsequently called plaintiff and Arrington into a meeting with Holtz in the Human Resources Office, where he stated that it appeared that plaintiff and Arrington could not work together. (Pl. Dep. 150).  Lee further stated that he "could not believe that Darren had lied," even though, according to plaintiff, he had already said that he never asked Arrington for a copy of the sales manual. (Pl. Dep. 150, 152).  Lee then told plaintiff that "maybe [she] should go on to another position" in the store. (*Id*.).  Specifically, Lee proposed moving plaintiff to a new position as a sales associate in the Hardware department. (*Id*. at 152). At that time, plaintiff was agreeable to the change because she was tired of working with Arrington. (*Id*.).  More specifically, plaintiff stated that she had "had enough" of Arrington, and she agreed that she had "no problem" moving to a different position:

> Q. And at that point the decision was reached to have you go to another department?
>
> A. Yes.
>
> Q. And how did you feel about that at the time?
>
> A. At the time I didn't want to – I had enough of Daren.  I think Daren had enough.  And they had – then he offered me another position.
>
> Q. 'He' being Scott [Lee]?
>
> A. Yes.
>
> Q. And you had no problem with that?

A. At that time, no.

(Pl. Dep. 152).

Plaintiff did not have any further interaction with Arrington while working in the new position. (Pl. Dep. at 154).[3]  However, after several weeks on the sales floor plaintiff became dissatisfied, in part because the position required her to work different hours than before.  Specifically, instead of working Monday through Friday from 7:00 a.m. to 4:00 p.m., she was required to work varying shifts, including 5:30 a.m. to 2:00 p.m. and 2:00 p.m. to 10:00 p.m..  Also, unlike her prior assignment, she had to work some weekends. (*Id.* at 153).  As part of this action, plaintiff states that after a few weeks as a sales associate, she decided not to return to work for several reasons, including the following: 1) that "the job [and work schedule] had totally changed"; 2) that she felt "humiliated after being repeatedly sexually harassed by Daren Arrington"; 3) that she believed that she had no chance for promotion because she was "black balled" by Arrington, Lee, and [another employee named Chris] Fox [("Fox")]; and 4) that she believed that because of the change in her position that she would have to wait an additional three months before requesting a transfer to a different store, which she had hoped to do in order to work closer to her home. (Pl. Aff. ¶ ¶ 8-9; Pl. Dep. 177).  There is no indication in the record, though, that plaintiff ever expressed any of these complaints to defendant following her transfer to the Hardware Department.  At most, plaintiff claims that after moving to the Hardware Department she inquired about the possibility of her

---

[3]Plaintiff states that she subjectively felt "humiliated" when she would see Arrington around the store, but she states that he did not do anything which was "harassing or discriminatory," and that he had been told not to talk to her or to go near her. (Pl. Dep. 154).

transferring to defendant's Oswego store, since it was closer to her home, but was informed that employees needed to be in a particular position for six months before they would be eligible for a transfer. (Pl. Dep. 176-178).  It is unclear whether the construction of the Oswego store was even completed when plaintiff made this inquiry. (*Id*.)  Nor does there appear to be any evidence in the record to suggest that plaintiff was "blackballed" by Arrington, Lee, or Fox.  To the contrary, plaintiff stated that she had no interaction with Arrington after moving to Hardware, and that she never had any problems with Fox.

In any event, plaintiff voluntarily resigned her position in February 2004, after being absent for several days on bereavement leave following the death of her grandmother.  As to that, plaintiff recalls having a telephone conversation with a store supervisor in which she stated that she was not returning to work "because there was too much going on with my job." (Pl. Dep. 82).  There is no indication that plaintiff said anything more specific, or that she complained about retaliation or any other type of discrimination at that time. (*Id*. at 82-87).

Apart from incidents involving herself, plaintiff contends that there was a general atmosphere of sexual harassment at the Webster store.  More specifically, plaintiff alleges that Fox sexually harassed female employees, although, as just mentioned, she admits that she never had any problem with Fox.  Plaintiff does not claim that she was aware of such a general atmosphere of sexual harassment during her employment with defendant.  Plaintiff states, in fact, that she never witnessed even a single incident of sexual harassment or discrimination apart from those which she claims were committed against her. (Pl. Dep. 156-157).  Rather, plaintiff relies upon statements which Holtz and Nowak allegedly made to Nowak's mother, of which plaintiff apparently learned

8

subsequent to her resignation.[4]  In that regard, Nowak allegedly told her mother that she "saw sexual harassment going on" at the store, which consisted of Fox making "inappropriate sexual comments to female employees." (Nowak Dep. 18, 21).  Holtz allegedly stated that Fox was committing sexual harassment and that Lee "did not take [the problem] seriously." (*Id*. at 25-26).  Holtz supposedly also told Nowak's mother that Lee had notice of unspecified sexual harassment against plaintiff and "did nothing" about it. (*Id*. at 27).[5]

Plaintiff commenced the subject action alleging claims for hostile work environment sexual harassment and retaliation.[6]  Following discovery defendant filed the subject motion for summary judgment.  Defendant contends that it is entitled to summary judgment because plaintiff cannot demonstrate that a hostile work environment existed.  Defendant contends that Arrington's alleged harassment was not severe or pervasive enough to establish a hostile work environment.  Defendant further maintains that it cannot be held liable for Arrington's actions even if plaintiff could establish a hostile environment, since it acted reasonably to prevent harassment, and plaintiff acted unreasonably by failing to utilize procedures that were in place to address

---

[4]Plaintiff's counsel in this action also represents Nowak in a lawsuit against Lowes. *See, Tina Nowak v. Lowe's Home Centers, Inc.*, 05-CV-6273 T(P).

[5]The Courts notes as an aside that, pursuant to defendant's personnel handbook, employees were directed to contact defendant's corporate office in North Carolina if they were "uncomfortable approaching [their] manager directly, or if satisfactory actions [was] not taken in response to [a] complaint." (Def. Appx. [#28-5] Ex. 9).  Accordingly, it is unclear why Nowak, the Store Sales Manager, or Holtz, the Human Resources Manager, would not have simply contacted defendant's corporate office if in fact Lee was ignoring them and allowing rampant sexual harassment to occur.  Fortunately, that is not an issue which this Court needs to resolve.

[6]During oral argument, plaintiff's counsel clarified that plaintiff is not pursuing a claim for constructive discharge.

harassment.  Finally, defendant states that plaintiff cannot prove that she was retaliated

against.

The parties fully briefed the motion, and counsel appeared before the

undersigned for oral argument on November 16, 2006.  The Court has considered the

parties' submissions and the arguments of counsel.

ANALYSIS

*Rule 56*

The standard for granting summary judgment is well established.  Summary

judgment may not be granted unless "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment

bears the burden of establishing that no genuine issue of material fact exists. *See,*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a

prima facie showing that the standard for obtaining summary judgment has been

satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In

moving for summary judgment against a party who will bear the ultimate burden of proof

at trial, the movant may satisfy this burden by pointing to an absence of evidence to

support an essential element of the nonmoving party's claim." *Gummo v. Village of*

*Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).  Once that burden has been

established, the burden then shifts to the non-moving party to demonstrate "specific

10

facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v.*
*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving
party must present evidence sufficient to support a jury verdict in its favor. *Anderson*,
477 U.S. at 249.  The parties may only carry their respective burdens by producing
evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts
contained in affidavits, attached exhibits, and depositions, must be viewed in the light
most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).
Summary judgment is appropriate only where, "after drawing all reasonable inferences
in favor of the party against whom summary judgment is sought, no reasonable trier of
fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d
Cir.1993).

It is well settled that the party opposing summary judgment may not create a
triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn
testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted).
Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124
(2d Cir. 1987)(citations omitted).

Courts must be "particularly cautious about granting summary judgment to an
employer in a discrimination case when the employer's intent is in question.  Because
direct evidence of an employer's discriminatory intent will rarely be found, affidavits and
depositions must be carefully scrutinized for circumstantial proof which, if believed,
would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d
Cir.1997)(citations and internal quotations omitted).  However, a plaintiff may not defeat

a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

*Title VII and the NYHRL*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).  However, "Title VII does not establish a 'general civility code' for the American workplace.  Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) (citation omitted).  It is well settled that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629, n.1 (2d Cir. 1997), *cert den*. 522 U.S. 997 (1997).[7]  Consequently, unless otherwise noted, references to Title VII below are also intended to refer to the NYHRL.

*Hostile Environment*

---

[7]An exception to this general rule is that "[u]nlike Title VII, [NY]HRL § 296(6) has been construed by the Second Circuit to impose liability on an individual 'defendant who actually participates in the conduct giving rise to a discrimination claim.'" *Lewis v. Triborough Bridge and Tunnel Authority*, 77 F.Supp.2d 376, 380 (S.D.N.Y. 1999) (*citing Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

To establish a hostile work environment claim, a plaintiff must show that

the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.  Proving such a claim involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.

In addition, the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer. Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.  According to two 1998 Supreme Court cases, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), this inquiry differs where the harassment is attributed not to non-supervisory co-workers but to a supervisor with immediate or successively higher authority over the employee. *Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. In that circumstance, a court looks first to whether the supervisor's behavior culminated in a tangible employment action against the employee.  If it did, the employer will, ipso facto, be vicariously liable.  If no such tangible employment action is present, however, an employer will still be liable for a hostile work environment created by a supervisor unless the employer successfully establishes an affirmative defense.  That defense requires the employer to show that (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005) (citations and internal

quotation marks omitted), *abrogated on other grounds by Kessler v. Westchester County*

*Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).

The law to be applied when considering whether conduct was sufficiently severe

and pervasive is well settled:

> Although isolated incidents ordinarily will not rise to the level of a hostile work environment, even a single incident of sufficient severity may so alter the terms and conditions of employment as to create such an environment. The matter of whether the conduct alleged was so severe or pervasive as to create an objectively hostile or abusive work environment, is to be decided based on the totality of the circumstances, in light of such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Where reasonable jurors could disagree as to whether alleged incidents of . . . harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law.

*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004) (citations and internal quotations omitted).

In the instant case the Court finds that Arrington's alleged conduct falls well short of establishing a hostile environment.  Initially, to the extent that plaintiff is attempting to include Arrington's remark about there being many Mexicans in Texas as part of her claim, the Court finds that the comment was not even discriminatory, at all, let alone related to her gender.  As for the rest of Arrington's comments, the Court will assume, for purposes of this decision only, that they were related to plaintiff's gender, though the coffee comment and Arrington's comments notifying plaintiff whenever her husband were in the store hardly appear to fit in that category.  Even considering all of these comments, however, the Court finds that Arrington's conduct is neither sufficiently severe or pervasive to constitute actionable harassment.

As for the severity of the complained-of conduct, the Court believes that Arrington's comment about plaintiff's weight and his calling her a bitch were clearly offensive but not particularly severe.  There were no sexual advances, instances of

14

inappropriate touching, or threats of physical harm.  There is also no indication that Arrington's comments had any impact on plaintiff's ability to perform her job.  The conduct was also not sufficiently pervasive because it occurred on only a few occasions over the course of three months.  Although Arrington may have been generally rude to his co-workers on a daily basis, his alleged mistreatment of plaintiff amounts to only a few isolated incidents.  Having found no hostile environment, the Court need not consider whether defendant could be held liable for Arrington's conduct.  Consequently, defendant is entitled to summary judgment on the hostile environment claims.

*Retaliation*

The Court similarly finds that defendant is entitled to summary judgment on the retaliation claim.  To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citations and internal quotations omitted).  It is well settled that "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Id.* at 566.  In deciding whether a particular activity amounts to "protected activity," "the employment practices opposed by the plaintiff need not have actually amounted to a violation of Title VII. Rather, the plaintiff must have had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001).

15

To make a prima facie showing of an adverse employment action, the plaintiff must show that the employer's actions caused a materially adverse change in the terms and conditions of employment.  In this regard, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d at 207 (*quoting  Burlington N. & Santa Fe Railway Co. v. White*, --- U.S. ----, 126 S.Ct. 2405, 2415 (2006)).  Moreover, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id*. at 209.

Retaliation claims are analyzed using the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert den.* 534 U.S. 993 (2001).  Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[8]  If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action].  At this stage, the employer need only articulate--but

---

[8]It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

need not prove-- the existence of a nondiscriminatory reason for its decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.  Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination.  In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . .  is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,*

*Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir.  2003).

At the third tier of the McDonnell Douglas test, simply proving that the employer's

proffered reason was false may, or may not, establish the required proof of

discriminatory intent:

The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct.  In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v.*

*Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)).  In this regard, "[t]he

relevant factors . . . include the strength of the plaintiff's prima facie case, the probative

value of the proof that the employer's explanation is false, and any other evidence that

supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

Applying these principles in the instant case, the Court finds that plaintiff has

established a prima facie case of retaliation.  Plaintiff has shown both protected activity

17

and a causal connection, though this latter showing is weak because it rests on nothing more than temporal proximity.  In other words, there is nothing to suggest that plaintiff's transfer to the Hardware Department was in any way related to her earlier complaints about Arrington, except for the fact that the complaints and the transfer occurred within a month of each other, approximately.  Lastly, the Court agrees that plaintiff's transfer could be viewed as materially adverse, since it required her to work shifts that were sometimes earlier and sometimes later than her previous schedule, as well as some weekends.  On this point, plaintiff complains that the change in her work schedule was particularly disruptive because she is the mother of school-age children.  Accordingly, the Court finds that plaintiff has established a prima facie case.

Nonetheless, the Court finds that defendant is entitled to summary judgment, since defendant has come forward with legitimate non-discriminatory reasons for transferring plaintiff, and plaintiff has failed to demonstrate a triable issue of fact as to whether those reasons are false and as to whether the real reason for the transfer was discrimination.  Specifically, defendant contends that it reassigned plaintiff to the Hardware Department because plaintiff and Arrington did not get along with each other, and because plaintiff was agreeable to the transfer.  Since plaintiff agreed with both of those reasons, she cannot demonstrate that they are false.

Moreover, there is no evidence in the record to suggest that plaintiff's transfer was actually motivated by retaliatory animus.  In this regard, the Court finds it significant that plaintiff was agreeable to the transfer at the time that it was made, having then worked in the store for three months and thus presumably being at least somewhat familiar with the duties of a sales associate.  Plaintiff now claims that she felt intimidated

18

into agreeing to take the new position, because she assumed that Lee would take Arrington's side, and that she would be fired if she did not agree to the transfer. However, there is no evidence that Lee said or did anything to give plaintiff that impression.  Nor is it clear why plaintiff would assume such a thing, since only a month earlier Lee, along with Holtz and Nowak, had reprimanded Arrington for his comment about plaintiff's weight.

Plaintiff also attempts to show that Lee allowed sexual harassment of female employees to go unchecked.  As to that, plaintiff contends that Lee "did nothing" to stop harassment.  However, even assuming that were true, there is no indication that Lee viewed the argument between plaintiff and Arrington leading up to plaintiff's transfer as involving sexual harassment.  For example, there is no indication that plaintiff accused Arrington of making her copy the sales manual unnecessarily because she was a woman.  Nor is there any indication that Lee ever retaliated against anyone, including plaintiff.  At the time plaintiff was transferred, the reassignment was viewed as a lateral move, with the same rate of pay and number of hours per week.  The fact that plaintiff subsequently decided that she did not like the new position does not suggest any retaliatory animus on defendant's part.  Moreover, while plaintiff claims to have eventually become dissatisfied with the Hardware Department's work schedule and with the effect of the reassignment on her ability to request a transfer to a different store, there is no indication that she told Lee or anyone else about her preference to work particular hours, or about her interest in moving to a different store, prior to the transfer.[9]

---

[9](Pl. Dep. 178) ("Q. When did you talk to Scott Lee about [the potential transfer to Oswego]? A. After the zone manager told me about it.  That was after I was transferred to Hardware.")

Nor did she attempt to obtain a new assignment once she decided that she did not like

the Hardware Department, but instead, merely resigned.  For all of these reasons, the

Court finds that defendant is entitled to summary judgment on the retaliation claim.

CONCLUSION

Defendant's motion for summary judgment [#27] is granted in its entirety and this

action is dismissed.

SO ORDERED.

Dated: Rochester, New York
        November 27, 2006

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge